[No. 36589. En Banc. January 30, 1964.]

FRANK LENCI et al., Respondents, v. THE CITY OF SEATTLE, Appellant.*

*Reported in 388 P. (2d) 926.

*A. C. Van Soelen* and *Gordon F. Crandall,* for appellant.

*Michael R. Donovan,* for respondents.

HAMILTON, J.—Plaintiffs (respondents), owners of four motor vehicle wrecking yards in Seattle, instituted a declaratory judgment proceeding by which they challenged the constitutionality of § 338 Seattle Ordinance No. 90316.[1] Section 338, in pertinent part, provides:

"The activities of a Motor Vehicle Wrecker shall be conducted entirely within an enclosed building, or on premises *enclosed by a view obscuring, firm and substantial fence or a solid wall, at least eight (8) feet high,* and no motor vehicle or part of a motor vehicle acquired or purchased in the course of such business shall be parked, stored or displayed on the outside of such building, fence or wall. Any such fence or wall shall be maintained in firm, substantial condition and shall have *not more than one (1) opening upon any public way.* Such opening shall be not more than twenty (20) feet wide, and shall be equipped with a substantial, solid, tight gate or door of the same height as the fence or wall. Such gate or door shall swing inwardly, or shall be parallel to the fence or wall and shall slide horizontally, and shall be kept securely closed when the establishment is not open for business." (Italics ours.)

Plaintiffs attacked the italicized portions of § 338 upon the grounds that such requirements are in conflict with state law, indefinite, discriminatory, and unreasonable.

The trial court, from the evidence presented, found, in essence, that the disputed provisions imposed private burdens outweighing public benefits, and concluded the requirements to be unreasonable and unconstitutional. The city of Seattle appeals.

---

[1] Ordinance No. 90316, a licensing and regulatory measure, amends Ordinance No. 48022 (the License Code) by adding thereto 11 sections relating to the business of "Motor Vehicle Wreckers."

In support of the trial court's findings and conclusions, plaintiffs point to evidence in the record revealing their compliance with state fencing requirements, the size of their wrecking yards (ranging from 1,500 by 300 feet to 200 by 300 feet), the cost of installing view obscuring fence (ranging from $2.50 to $8 per lineal foot), potential loss of business (15 to 25 per cent) resulting from obscuring their merchandise from passerby view, their location in an industrial zone, and the restriction of the ordinance requirements to the auto wrecking business.

On the other hand, the city points to evidence in the record indicating a particular susceptibility of open auto wrecking yards and their merchandise to thefts, the rising incidence of such offenses, particularly by juveniles, the difficulties of police patroling, the desirability of view obscuring fences as a crime preventative measure and an aid to apprehension, the existence of a zoning ordinance, which is not challenged, requiring similar fencing of wrecking yards within 500 feet of residential zones, and to traffic safety and fire control features in the access limitations.

■ At the outset, it is to be noted that municipalities derive their authority to enact ordinances in furtherance of the public safety, morals, health, and welfare from Const. Art. 11, § 11, which provides:

"Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws."

Of this constitutional grant of authority we, in *Detamore v. Hindley*, 83 Wash. 322, 326, 145 Pac. 462, have said:

"This is a direct delegation of the police power as ample within its limits as that possessed by the legislature itself. It requires no legislative sanction for its exercise so long as the subject-matter is local, and the regulation reasonable and consistent with the general laws. . . ."

■ An ordinance to be void for unreasonableness must be clearly and plainly unreasonable. *Seattle v. Hurst,* 50 Wash. 424, 97 Pac. 454. The burden of establishing the invalidity of an ordinance rests heavily upon the party challenging its constitutionality. *Letterman v. Tacoma,* 53 Wn.

(2d) 294, 333 P. (2d) 650. Every presumption will be in favor of constitutionality. *Winkenwerder v. Yakima*, 52 Wn. (2d) 617, 328 P. (2d) 873. And, if a state of facts justifying the ordinance can reasonably be conceived to exist, such facts must be presumed to exist and the ordinance passed in conformity therewith. *Shea v. Olson*, 185 Wash. 143, 53 P. (2d) 615, 111 A.L.R. 998. These rules are more than mere rules of judicial convenience. They mark the line of demarcation between legislative and judicial functions.

With the foregoing in mind, we turn first to the arguments revolving about the compatability of the challenged portions of Ordinance No. 90316 with existing state statutes and regulations.

RCW 46.80 provides for state licensing of motor vehicle wreckers. The portions thereof pertinent to the present inquiry provide:

" . . . The words 'established place of business,' whenever used in this chapter, shall mean a building or enclosure which the owner occupies either continuously or at regular periods and where his books and records are kept and business is transacted and which must conform with the zoning regulation of municipalities." RCW 46.80.010.

"It shall be unlawful for any motor vehicle wrecker to keep any motor vehicle or any integral part thereof in any place other than the established place of business, designated in the certificate issued by the director of licenses, without permission of the director, and all premises containing such motor vehicles or parts thereof shall be enclosed by a wall, fence or wire enclosure." RCW 46.80.130.

"The director of licenses is hereby authorized to promulgate and adopt reasonable rules and regulations not in conflict with provisions hereof for the proper operation and enforcement of this chapter." RCW 46.80.140.

"Any municipality or political subdivision of this state which now has or subsequently makes provision for the regulation of automobile wreckers shall comply strictly with the provisions of this chapter." RCW 46.80.160.

The remaining portions of RCW 46.80 deal with licensing, bonding, vehicle title record keeping and reporting, inspection, improper practices, and penalties.

Pursuant to RCW 46.80.140, *supra,* the director of licenses promulgated, among others, the following rule:

"Established place of business is defined as 'A building or enclosure which the owner occupies either continuously or at regular periods and where his books and records are kept and business is transacted'. All fence enclosures must be six (6) feet high, composed of at least six (6) strands of barb wire uniformly spaced, or wire mesh, with posts twelve (12) feet apart, or a solid fence of boards or metal subject to the zoning regulations of municipalities. Failure to comply with these provisions constitutes a 'Gross Misdemeanor'." Exhibit No. 25.

It is plaintiffs' contention that, except for appropriate zoning regulations, the state has pre-empted the field of motor vehicle wrecking yard regulation and, if not, the 8-foot view obscuring fence provision of § 338 is in conflict with the state statute and administrative requirements in that such provision prohibits that which the statute and regulation permits. It is the city's contention that the legislature did not, in enacting RCW 46.80, intend to occupy the field covered by § 338, and that the questioned provisions are consistent with and complementary to the state statute and administrative regulations.

■ We have stated that the plenary police power in regulatory matters accorded municipalities by Const. Art. 11, § 11, ceases when the state enacts a general law upon the particular subject, unless there is room for concurrent jurisdiction. *Seattle Elec. Co. v. Seattle,* 78 Wash. 203, 138 Pac. 892; *Seattle v. Rothweiler,* 101 Wash. 680, 172 Pac. 825; *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 21 P. (2d) 721, affirmed 291 U. S. 300, 78 L. Ed. 810, 54 S. Ct. 383; *Yakima v. Gorham,* 200 Wash. 564, 94 P. (2d) 180; *Kimmel v. Spokane,* 7 Wn. (2d) 372, 109 P. (2d) 1069.

Whether there be room for the exercise of concurrent jurisdiction in a given instance necessarily depends upon the legislative intent to be derived from an analysis of the statute involved. *In re Iverson,* 199 Cal. 582, 250 Pac. 681; 1 Antieau, Municipal Corporation Law § 5.22, p. 287. If the legislature is silent as to its intent to occupy a given field,

resort must be had to the purposes of the legislative enactment and to the facts and circumstances upon which the enactment was intended to operate. If, however, the legislature affirmatively expresses its intent, either to occupy the field or to accord concurrent jurisdiction, there is no room for doubt.

■ A full reading of RCW 46.80 reveals that in its enactment the legislature was primarily concerned with maintaining the integrity of the state system of motor vehicle titles and registration. At best, it was only incidentally concerned with the location and characteristics of the premises occupied by motor vehicle wrecking yards. The legislature, in both RCW 46.80.010 and 46.80.160, affirmatively recognized the probability and, inferentially, the desirability of local regulation in the areas governed by § 338.

We hold that the state did not by RCW 46.80 pre-empt the field of motor vehicle wrecking yard regulation covered by the challenged portions of Ordinance No. 90316.

The next question, then, is whether there be a conflict between RCW 46.80.130, requiring a wrecking yard to be enclosed "by a wall, fence or wire enclosure," the administrative rule, *supra*, specifying "fence enclosures must be six (6) feet high, composed of at least six (6) strands of barb wire . . . or wire mesh . . . or a solid fence of boards or metal subject to the zoning regulations," and that portion of § 338 requiring "a view obscuring, firm and substantial fence or a solid wall, at least eight (8) feet high."

■ It is at once apparent that the provisions of § 338 add to, rather than subtract from, the state requirements. Neither the statute nor the administrative regulation expressly limits the requirements to those specified. Section 338 being regulatory, not prohibitory, the rule applicable is stated in *State ex rel. Isham v. Spokane,* 2 Wn. (2d) 392, 398, 98 P. (2d) 306:

" . . . It is well-settled that a city may enact local legislation upon subjects already covered by state legislation so long as its enactments do not conflict with the state legislation, *In re Ferguson,* 80 Wash. 102, 141 Pac. 322; and

the fact that a city charter provision or ordinance enlarges upon the provisions of a statute by requiring more than the statute requires, does not create a conflict unless the statute expressly limits the requirements. 43 C. J. 219; *Bellingham v. Cissna*, 44 Wash. 397, 87 Pac. 481; *Seattle v. Proctor*, 183 Wash. 299, 48 P. (2d) 241."

We conclude there is no conflict.

In support of the trial court's judgment, plaintiffs assert the ordinance requirement of a view obscuring fence "at least" 8-feet high is indefinite, in that the ordinance fails to specify that the fence shall be view obscuring from street level. Plaintiffs contend, and the trial court found, that to obscure plaintiffs' merchandise from the view of all approaches to their yards would, because of surrounding topography, require in some instances fences ranging up to 200 feet in height.

■ We find this assertion, insofar as rendering the ordinance invalid for indefiniteness, to be without merit. As stated in *In re Horse Heaven Irr. Dist.*, 11 Wn. (2d) 218, 226, 118 P. (2d) 972:

"It is a rule of such universal application as to need no citation of sustaining authority that no construction should be given to a statute which leads to gross injustice or absurdity."

For this court, or the city in the administration of the ordinance, to construe it as requiring concealment of plaintiffs' merchandise from all avenues of approach would be wholly unreasonable, unrealistic, and unjust.

We do not so construe it, nor do we impute to the city an intent to so construe it.

Plaintiffs next urge in support of the trial court's judgment that the challenged portions of the ordinance are discriminatory. The trial court, although finding that there existed other businesses in industrial zones, and other parts of the city having unsightly features, concluded that the regulation in question was not discriminatory. The trial court was correct.

■ We stated in *Clark v. Dwyer*, 56 Wn. (2d) 425, 435, 353 P. (2d) 941:

"Article I, § 12 of the state constitution and the fourteenth amendment to the Federal constitution, prohibiting special privileges and immunities and guaranteeing equal protection of the laws, require that class legislation must apply alike to all persons within a class, and reasonable ground must exist for making a distinction between those within, and those without, a designated class. Within the limits of these restrictive rules, the legislature has a wide measure of discretion, and its determination, when expressed in statutory enactment, cannot be successfully attacked unless it is manifestly arbitrary, unreasonable, inequitable, and unjust. *Faxe v. Grandview*, 48 Wn. (2d) 342, 294 P. (2d) 402; *Bauer v. State*, 7 Wn. (2d) 476, 110 P. (2d) 154; *State ex rel. Bacich v. Huse*, 187 Wash. 75, 59 P. (2d) 1101; *Northern Cedar Co. v. French*, 131 Wash. 394, 230 Pac. 837. It is universally held that courts will not look too nicely into legislative acts to determine whether a reasonable distinction exists. . . ."

Under the ordinance, all motor vehicle wrecking yards within the city of Seattle are treated alike. The distinction drawn by the city between auto wrecking yards, used car lots, industrial uses, and garbage dumps is the particular susceptibility of wrecking yards to theft of used auto parts, coupled with the dangers inherent in potential accumulations of inflammable materials such as oil and gas. Upon somewhat analogous grounds, we have sustained reasonable regulatory measures relating to junk yards. *Sherman, Clay & Co. v. Brown*, 142 Wash. 37, 252 Pac. 137.

In the instant case, we do not find the distinction drawn to be manifestly arbitrary, unreasonable or unjust. The ordinance is not discriminatory.

█ We turn finally to the basis of the trial court's declaration of invalidity. It found and concluded both the fencing requirement and the limitation of access provision of § 338 to be unreasonable. As stated in *Ragan v. Seattle*, 58 Wn. (2d) 779, 783, 364 P. (2d) 916, our inquiry in this regard is:

" . . . Do. the regulations have a reasonable and substantial relation to the accomplishments of some purpose fairly within the legitimate range or scope of the police power and not violate any direct or positive mandate of the constitution? . . ."

For convenience, we will consider each regulation separately.

With respect to the fencing requirement, on direct examination, the Chief of Police of the City of Seattle testified, *inter alia*:

"Q. . . . why did you feel that an ordinance regulating motor vehicle wreckers was considered— A. Well, there was some demonstrated in, in crime problems that were unique to auto wrecking yards. Q. What are some of those hazards? . . . A. The volume of thefts of parts of automobiles, complaints engendered in the community by people coming to wrecking yards late at night, driving around. There have been instances within my own knowledge of people being hurt in wrecking yards at night when they were attempting to steal from the proprietor. . . . Q. Is there any juvenile problem in connection with automobile wrecking yards? A. A rather considerable one. Q. Is that unique to the wrecking yards as distinguished from other types of business. . . . A. Yes. It is. Q. How does a view-obscuring fence of eight feet in heigth help combat the hazards that you mentioned? A. It helps in several ways. In the first place the very physical security of the fence makes it difficult to enter the premises, makes it difficult to leave them or to take anything out over the fence. Many of the offenses which come to our attention in connection with recking yards are . . . characterized as crimes of opportunity. . . . A. . . . that is, a person sees in a wrecking yard some part of an automobile that he wants, and he comes back at night to get it. If they were not able to see it, the probability is that the offense would not be committed. An eight-foot fence is tall enough so that it is extremely difficult to climb. And we generally find areas secured by that type of fence, that there is less criminal problem that in, oh, four foot or six foot fence, which almost anyone can go over."

Upon cross-examination, the merits of a view obstructing fence versus cyclone or wire mesh fencing were explored, as were the susceptibility of other types of businesses to crimes of opportunity. In answer to questions propounded by the trial court, following cross-examination, the Chief of Police testified:

"THE COURT: . . . a good many of these businessmen that were here this morning indicated that it was their experience in their particular lots that they own that on a board fence it was quite easy for a juvenile to lift the bottom of the board up and go underneath . . . The[y] indicated that there are some offsetting balances, and I understood your testimony to be that this visibility has some importance. But you feel that it would be better not to leave a temptation as an offsetting factor to a juvenile. . . . your idea of screening it, as I understand it, would be that the child wouldn't get in there in the first place, because he would not see the particular part that he wants? A. That is essentially it. In the first part the ordinance requires a substantial fence. That means the board at the bottom would not be a substantial fence. THE COURT: . . . how much more importance would you place upon this visibility, the temptation versus the ability to observe somebody if you had a strong, solid fence? A. I would place considerably more importance on preventing, it would be, or potential theif from seeing into the wrecking yard than I would on the policeman's ability to see in the yard as a preventative measure. . . . We have forty-seven hundred miles of public thoroughfares in the city. We never have over a maximum of one hundred and six police units on the street. So we can't prowl them all. I know from interviewing juveniles and reading from the statements taken from them many things are stolen from auto wrecking yards would not ordinarily be stolen except the youngsters saw where to find it, could get at it and went back there at night and got it. . . . that is a reiterated thing in the field of juveniles that I have been connected with for years in the police department. . . . THE COURT: Well, I am trying to get the balance. Apparently the court cannot take and decide the one choice that the legislative body made is not as good as another choice. We have to get it on a different basis. . . . Now, I am wondering if all of the people were forced to upgrade their fences to where they belong if then this problem would not get down into a different perspective, so the fear and objection we have of losing a right to display their goods to their prospective customers . . . A. Well, Judge Royal, the only thing that I can say on that is upgrading their fences to an acceptable level, the recommendations of the police department to the city council as to what would be an acceptable level of fence are embodied in the ordinance. THE

COURT: With reference to everything else being equal in the fence, as the substantial nature of it and the height of it, would you say that a solid, board fence is considerably more important than a wire fence, that being the only difference? A. I would say it is. Yes, sir."

We have quoted somewhat extensively from the testimony of the Chief of Police to illustrate the premise upon which the city rests its contention that the ordinance provisions in question constitute a valid exercise of municipal police power. In opposition to this premise, the plaintiffs presented evidence bearing upon cost factors, business diminishment potential, volume of thefts, and the merits of cyclone or wire mesh fencing as opposed to view obscuring fencing.

The record reveals plaintiffs and others of their trade were represented before the city council at the time Ordinance No. 90316 was being considered. Presumably the city council had before it the factors now urged by plaintiffs, as well as those factors urged by the city. Presumably the city council considered the factors presented, weighed them, and found the regulatory measures incorporated in § 338 necessary and reasonable. The trial court weighed the factors and disagreed.

While we, as was the trial court, are impressed with the evidence and arguments advanced by plaintiffs, and can appreciate the indignations arising from the burdens imposed upon their trade, traditional distinctions between the legislative and judicial function do not permit a precise and delicate balancing of equities, or factors, by the judiciary, in determining the reasonableness of a legislative enactment. The judiciary cannot engage with the legislative bodies in a race of opinions upon points of reason, wisdom, and expediency. Rather, as pointed out in *Seattle v. Hurst, supra,* a municipal ordinance, to be judicially pronounced void for unreasonableness, must be clearly and plainly unreasonable. Reasonable burdens and restrictions imposed as a result of an otherwise valid exercise of the police power do not render the exercise of such power in-

valid. *Clark v. Dwyer, supra; State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101.

Minimizing crime, vandalism, and petty thievery is an objective well within the recognized scope of municipal police power. We cannot say the method adopted by the city council in § 338, as related to automobile wrecking yards and the burdens imposed thereby, are patently unreasonable, unwarranted, and capricious. As stated in *Ragan, v. Seattle, supra,* quoting with approval *Ohio ex rel. Clarke v. Deckenbach,* 274 U. S. 392, 71 L. Ed. 1115, 47 S. Ct. 630 (p. 786):

" 'It is enough for present purposes that the ordinance, in the light of facts admitted or generally assumed, does not preclude the possibility of a rational basis for the legislative judgment and that we have no such knowledge of local conditions as would enable us to say that it is clearly wrong.' "

Plaintiffs assert that aesthetic considerations underlie the fencing provisions, and that such considerations will not support such a regulation. Plaintiffs cite the case of *Vassallo v. Board of Com'rs of City of Orange,* 125 N.J.L. 415, 15 A. (2d) 603. Additional cases of interest, bearing upon requirements involving view screening of wrecking and junk yards, are: *New Orleans v. Southern Auto Wreckers,* 193 La. 895, 192 So. 523; *Shreveport v. Brock,* 230 La. 651, 89 So. (2d) 156; *State v. Brown,* 250 N. C. 54, 108 S. E. (2d) 74; *Township of Howell v. Sagorodny,* 46 N. J. Super. Ct. 182, 134 A. (2d) 452; *Town of Vestal v. Bennett,* 199 Misc. 41, 104 N.Y.S. (2d) 830; *Vermont Salvage Corp. v. Village of St. Johnsbury,* 113 Vt. 341, 34 A. (2d) 188; *State v. Kievman,* 116 Conn. 458, 165 Atl. 601, 88 A.L.R. 962; *City of Defiance v. Killion,* 116 Ohio App. 60, 186 N. E. (2d) 634; *Farley v. Graney,* 119 S. E. (2d) 833 (W. Va.); *People v. Sevel,* 120 Cal. App. (2d) Supp. 907, 261 P. (2d) 359; *People v. Dickenson,* 171 Cal. App. (2d) Supp. 872, 343 P. (2d) 809; *Highway 100 Auto Wreckers v. City of West Allis,* 6 Wis. (2d) 637, 96 N. W. (2d) 85, 97 N. W. (2d) 423.

The basic rule to be gleaned from a reading of these authorities is that aesthetic conditions alone will

not support invocation of the police powers; however, if a regulation finds reasonable justification in serving a generally recognized ground for the exercise of the municipal police power, the fact that aesthetic considerations play a part in its adoption does not affect its validity. See 6 McQuillin, Municipal Corporations (3d ed.) §§ 24.15, 24.16, p. 476, *et seq.*

Particularly apropos to our present determination is the holding of the Wisconsin Supreme Court in the case of *Highway 100 Auto Wreckers v. City of West Allis, supra.* Before the court in that case was an ordinance requiring a 150-foot setback from the highway, for screening purposes. In holding the ordinance to be a valid exercise of the municipal police power, the court said (p. 649):

"The trial court found the provision to be invalid. The learned trial court's decision states:

" 'Thus, the reason or purpose of the 150 foot setback from the streetline here appears to rest primarily upon aesthetic grounds. While the city argues that the setback is to minimize vandalism, thefts, and the commission of other crimes, that is believed not to be sound, for such crimes can just as well, if not more so, be committed on the property so used beyond the setback line.

" '. . .

"The municipality is the judge of the necessity and reasonableness of its ordinance under the police power and its ordinance creates a *prima facie* presumption that it is reasonable. *Dyer v. City Council of Beloit, supra* [250 Wis. 613, 27 N. W. (2d) 733]. The learned trial court concluded that the ordinance's setback measures are not useful in minimizing criminal conduct and police problems, but we consider that problem is one for the city council within reason to solve, not for the court."

We conclude the trial court erred in holding the fencing provisions of § 338 unconstitutional.

We turn, then, to the access limitations imposed by § 338. As will be noted, such limitation takes the form of restricting the number of fence openings permitted upon any public way. Plaintiffs contend this restriction constitutes a taking of their rights of ingress and egress to a public street

abutting their property without just compensation, or, in any event, the regulation is unreasonable. The city contends the restriction to be a valid and reasonable exercise of the police power in the interests of traffic safety and, indirectly, in the interests of fire control.

 We have held that the owner, or proprietor, of property abutting upon a public thoroughfare has a right to free and convenient access thereto, and that such right carries with it entitlement to just compensation if taken or damaged. *Walker v. State,* 48 Wn. (2d) 587, 295 P. (2d) 328; *McMoran v. State,* 55 Wn. (2d) 37, 345 P. (2d) 598.

We have, however, recognized, although in a different context, that the rights of an abutting occupant are not absolute, and are subject to a reasonable exercise of municipal police regulatory power, due regard being given to the convenience and safety of the public and the rights of the abutting occupant. *Kimmel v. Spokane, supra; Walker v. State, supra.* This view is in accord with that adopted in most jurisdictions. See 73 A.L.R. (2d) 652; 64 C.J.S., Municipal Corporations § 1703, p. 99.

In the instant case, it is the city's basic contention that unrestricted entrance and exit of wrecked, broken, and spent automobiles into and from wrecking yards, at divers points along an abutting public street, creates an undue burden upon and hazard to the traveling public. Plaintiffs do not seriously disagree with this contention, nor do we. The regulation is within the scope of the police power. The basic issue, then, is whether the limitation to one access per abutting public way is reasonable.

 The dimensions of plaintiffs' yards vary. Some abut upon more than one public way. It is reasonable to assume that other yards in the city of Seattle similarly lack uniformity. Strikingly illustrative of the inequality in convenience and rights of access, imposed by the regulation upon varying yards, is the fact that one of the yards here involved abuts upon a public way for 1,500 feet. Clearly, a limitation of one access per 1,500 feet of frontage

is unreasonable. Neither the ordinance nor the record contains any standards permitting alleviation.

Insofar as § 338 indiscriminately limits access of motor vehicle wrecking yards to one access per public way, we hold it to be unreasonable and void.

The trial court's judgment invalidating the fencing requirements of § 338 is reversed. Its judgment invalidating the access requirements of § 338 is modified in accordance herewith. Each party shall bear their own costs.·

OTT, C. J., HILL, FINLEY, WEAVER, ROSELLINI, HUNTER, and HALE, JJ., concur.

DONWORTH, J., concurs in the result.

---

March 19, 1964. Petition for rehearing denied.

*Reported in 388 P. (2d) 970.