[No. 5223–1.   Division One.   April 17, 1978.]

SNOHOMISH COUNTY, *Appellant,* v. MARIETTA
THOMPSON, *Respondent.*

*Robert E. Schillberg, Prosecuting Attorney,* and *Richard S. Lowry, Deputy,* for appellant.

*Rutherford, Kargianis & Austin* and *George Kargianis,* for respondent.

JAMES, J.—Plaintiff, Snohomish County, brought this action seeking a permanent injunction restraining defendant, Marietta Thompson, from maintaining a mobile home on property located in an unincorporated area of Snohomish County. The trial judge dismissed the County's complaint with prejudice. We affirm.

There is no factual dispute. The property upon which Thompson's mobile home is situated is zoned by the County as Rural Residential 8400. The Snohomish County zoning code provides in relevant part as follows:

The following uses are permitted in an RR 8400 zone:
(1) Single family dwellings;

. . .

(15) Mobile homes when located in a district within any residential zone which is indicated on the zoning map for this purpose and is signified by adding the suffix "X" to the zone designation. "X" zones may apply to areas where at least twenty percent (20%) of the existing housing units are mobile homes on individual lots. Mobile homes or prefabricated housing units that meet applicable county building, plumbing and electrical codes are permitted outright in single family residential zones.

Snohomish County zoning code § 18.18.020.

The district in which Thompson's mobile home is located is not an "X" zone and her home does not meet Snohomish County's "applicable county building, plumbing and electrical codes . . ." Snohomish County zoning code § 18.18-.020. However, as the trial judge found, Thompson's "mobile home bears the insignia of the Washington State Department of Labor and Industries denoting that it is

built in conformance with the applicable construction standards of the State of Washington." Finding of fact No. 9.

As did the trial judge, we perceive the issues to be (1) whether the State has preempted the "field" of establishing mobile home construction standards, and (2) if it has, whether the enforcement of the County's ordinance would result in depriving Thompson of a property right without due process of law.

■■ Clearly, the State has preempted the regulation of body and frame design and the installation of plumbing, heating and electrical equipment in mobile homes. Such regulation is the expressed purpose of RCW 43.22.340, which provides in relevant part that:

> The director of labor and industries shall prescribe and enforce rules and regulations governing safety of body and frame design, and the installation of plumbing, heating, and electrical equipment in mobile homes, . . . Such rules and regulations shall be reasonably consistent with recognized and accepted principles of safety for body and frame design and plumbing, heating, and electrical installations, in order to protect the health and safety of the people of this state from dangers inherent in the use of substandard and unsafe body and frame design, construction, plumbing, heating, electrical, and other equipment . . .

In *Lenci v. Seattle,* 63 Wn.2d 664, 669, 388 P.2d 926 (1964), it is stated that "the plenary police power in regulatory matters accorded municipalities by Const. Art. 11, § 11, ceases when the state enacts a general law upon the particular subject, unless there is room for concurrent jurisdiction." As is further discussed in *Lenci* on pages 669–70:

> Whether there be room for the exercise of concurrent jurisdiction in a given instance necessarily depends upon the legislative intent to be derived from an analysis of the statute involved. *In re Iverson,* 199 Cal. 582, 250 Pac. 681; 1 Antieau, Municipal Corporation Law § 5.22, p. 287. If the legislature is silent as to its intent to occupy a given field, resort must be had to the purposes of the

legislative enactment and to the facts and circumstances upon which the enactment was intended to operate. If, however, the legislature affirmatively expresses its intent, either to occupy the field or to accord concurrent jurisdiction, there is no room for doubt.

There is no room for doubt concerning the legislature's intent to exclusively regulate mobile home construction. RCW 43.22.410 provides that:

> Any mobile home, commercial coach and/or recreational vehicle that meets the requirements prescribed under RCW 43.22.340 shall not be required to comply with any ordinances of a city or county prescribing requirements for body and frame design, construction or plumbing, heating and electrical equipment installed in mobile homes, commercial coaches and/or recreational vehicles.

■ The County contends, however, that although the State may have preempted the regulation of mobile home *construction,* the County has not been precluded from regulating the *siting* of mobile homes through the exercise of its power to zone. The trial judge dealt with this contention in his written memorandum opinion.

> Plaintiff contends that the State's preemption of the field with respect to mobile home building standards does not cut across the powers of local governments to regulate the siting of mobile homes under land use regulations. With this contention the court agrees. However, plaintiff's land use regulations permit mobile homes meeting county building standards outright in R R 8400 and prohibit mobile homes meeting only state building standards. As the superior legislative authority has determined that a mobile home bearing the insignia of approval possessed by defendant's mobile home is satisfactory to protect the "safety and health" of the people, then the only basis upon which the county's police power can be exercised to permit a discrimination between mobile homes meeting and not meeting county building standards is the "public welfare."

(3) Is The Resolution as it Applies to Defendant Unconstitutional?

Plaintiff's counsel has argued that its legislative body could find public welfare justification for its restriction of

mobile homes in residential zones based upon, among other things, the restriction of instant housing, urban sprawl, and the maintenance of property values, and in this connection that aesthetics can play a part in making such determinations, particularly with respect to property values. Assuming, *arguendo,* that plaintiff is correct and that the general welfare would permit the exercise of police power in barring or restricting mobile homes in residential zones, in this court's view plaintiff has not made such a determination for the reason that it will permit outright those mobile homes meeting local building standards.

While no evidence was taken on the subject, the court is of the understanding that the local building standards are primarily internal, that is plumbing, heating, electrical, etc. and have little effect on the outside appearance, size, etc. of a mobile home; and that it is principally the exterior features that have a bearing on the general welfare considerations.

We adopt the trial judge's analysis. Our Supreme Court has in numerous cases observed that zoning ordinances are a valid exercise of the police power granted by article 11, section 11 of our constitution. *Cf. Lenci v. Seattle, supra.* Likewise, the court has frequently stated that zoning ordinances "will be upheld if there is a substantial relation to the public health, safety, morals, or general welfare." *Lutz v. Longview,* 83 Wn.2d 566, 574, 520 P.2d 1374 (1974). From the many cases dealing with zoning problems, the rule has evolved in Washington that a zoning ordinance may not be judicially struck down if a state of facts can reasonably be conceived to exist which would justify the legislation. *State v. Laitinen,* 77 Wn.2d 130, 459 P.2d 789 (1969). And, "[u]nder this rule, courts are impressed with a duty to ascertain whether reasonably conceivable facts would justify the enactment." *State ex rel. Randall v. Snohomish County,* 79 Wn.2d 619, 624, 488 P.2d 511 (1971). The trial judge was familiar with the rule and in his memorandum opinion stated as follows:

In the case at bar, while defendant's proof did not address itself to the differences between the two classes

of mobile homes, nevertheless, the court cannot find from the evidence, the pleadings, or the memoranda or argument of counsel any facts which this court can reasonably conceive to justify the discrimination between mobile homes meeting only state standards and mobile homes meeting local building standards on the grounds of general welfare.

Much of the evidence and argument in this case goes to the question of whether or not plaintiff can constitutionally prohibit or substantially regulate mobile homes in the R R 8400 zone. That issue would be squarely presented to the court had the county not permitted outright mobile homes meeting local building standards in such zones, but that not being the case here, it is unnecessary for this court to reach that question.

We adopt the trial judge's reasoning and affirm.

SWANSON and RINGOLD, JJ., concur.

Reconsideration denied June 22, 1978.

Review denied by Supreme Court December 1, 1978.