932 P.2d 646 (1996)
84 Wash.App. 296
Wilton RABON, Appellant,
v.
CITY OF SEATTLE, a municipal corporation, Respondent.
No. 37183-5-1.
Court of Appeals of Washington, Division 1.
October 28, 1996.
Publication Ordered December 16, 1996.
Review Granted May 7, 1997.
*647 Mitzi D. Leibst, Seattle, for Appellant.
Kevin D. Kilpatrick, Seattle, for Respondent.
MICHAEL F. MOYNIHAN, Judge Pro Tem.[1]
Wilton Rabon appeals the superior court's denial of a preliminary injunction. That injunction would have prevented the imminent destruction of his two Lhasa apso dogs, which were found to be vicious by a Seattle Municipal Court jury. He contends that his likelihood of prevailing on the merits of his underlying constitutional claims requires the superior court to grant the injunction. Because we conclude that Rabon could not prevail on the merits, we affirm the denial.
Rabon is the owner of several dogs. But his problems, and eventually this appeal, arose because he was unable to control two of those dogs. In November 1991, Seattle Animal Control received a complaint that Rabon's dogs had attacked a passerby. In February 1992, and twice in June 1992, complaints were made to Seattle Animal Control about the dogs. The two dogs were seized and eventually returned to Rabon on certain conditions, including having the dogs on a leash when they were not in the residence.
On May 2, 1993, the same two dogs unleashedattacked and bit Mariliz Romano and Ann Whytemore. On May 4, 1993, these dogsagain unleashedattacked and bit Judith Lewis. Seattle Animal Control seized and impounded the dogs. Rabon was charged with four counts of owning a vicious dog, and on October 1, 1993, a jury convicted him of all four counts. He appealed, but the decision was affirmed by the superior court and a discretionary review was denied by the Court of Appeals.
Upon completion of the appeals, the City notified Rabon of its intent to destroy the two dogs. Rabon filed a complaint against the City alleging that the destruction of his dogs would violate state and federal constitutional protections. Rabon also filed a motion for a preliminary injunction. The motion was denied. Rabon appeals from the denial of that motion. This court granted a stay pending appeal.
The parties agree that the standard of review for a preliminary injunction is abuse of discretion, i.e., whether the trial court's decision is based on untenable grounds, is manifestly unreasonable, or is arbitrary. Washington Fed'n of State Employees, Council 28, AFL-CIO v. State, 99 Wash.2d 878, 887, 665 P.2d 1337 (1983). The parties further agree that to get an injunction Rabon must show that he meets the following three criteria:
(1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him.
Tyler Pipe Industries, Inc. v. Department of Revenue, 96 Wash.2d 785, 792, 638 P.2d 1213 (1982) (quoting Port of Seattle v. International Longshoremen's & Warehousemen's Union, 52 Wash.2d 317, 319, 324 P.2d 1099 (1958)). The second and third criteria are not in dispute and favor granting the preliminary injunction. At issue in this case is the first criterion: whether Rabon has a clear legal or equitable right in his underlying case against the City.
*648 Before we reach the merits of that issue, we discuss Rabon's contention that the trial court inappropriately adjudicated the merits of the underlying case when ruling on the preliminary injunction. To determine whether Rabon would have a clear legal or equitable right entitling him to a preliminary injunction, the trial court necessarily considered the applicable law and how it would apply to the facts of the case. Ordinarily, when hearing a motion for a preliminary injunction, the trial court "does not adjudicate the ultimate rights in the lawsuit"; rather the trial court only examines the likelihood that the moving party will prevail on the merits. Tyler Pipe, 96 Wash.2d at 793, 638 P.2d 1213. But where the essential facts are not in dispute and the only issue on the merits is an issue of law, the trial court necessarily decides the merits of the case when it decides whether there is a likelihood that the plaintiff will prevail on the merits.[2] Cases citing the rule that the trial court should not adjudicate the ultimate rights in the lawsuit have contained issues of facts. See, e.g., Tyler, 96 Wash.2d at 793, 638 P.2d 1213 (issue of fact was whether Tyler Pipe's nexus with the State was so attenuated that the State could not require Tyler Pipe to pay the disputed tax). We therefore conclude that the trial court did not err by essentially adjudicating the ultimate merits of the suit.
Like the trial court in this case, we too must reach the ultimate issues of law raised by Rabon in his underlying suit. Those issues are: (1) whether general laws providing for the registration of dangerous dogs preempts municipal legislation regulating vicious dogs; (2) whether the Seattle ordinance providing for the destruction of vicious dogs conflicts with those same general laws; and (3) whether Rabon's procedural due process rights were violated.
Rabon contends that the trial court erred by concluding that he had not shown a likelihood of success on the merits of his preemption/conflict claim. He claims that RCW 16.08.080 either preempts or is in irreconcilable conflict with Seattle Municipal Code (SMC) 9.25.030. The law of preemption, and its close cousin, irreconcilable conflict, are governed by Washington Constitution, article XI, section 11, which provides that:
Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.
Courts analyze preemption and conflict claims independently. See Brown v. City of Yakima, 116 Wash.2d 556, 561, 807 P.2d 353 (1991) (analyzing preemption and conflict separately).

Preemption:
Lenci v. City of Seattle, 63 Wash.2d 664, 388 P.2d 926 (1964), cited by appellant, sets forth a preemption test that asks whether the Legislature intended concurrent jurisdiction:
the plenary police power in regulatory matters accorded municipalities by Const. Art. 11, § 11, ceases when the state enacts a general law upon the particular subject, unless there is room for concurrent jurisdiction.
Whether there be room for the exercise of concurrent jurisdiction in a given instance necessarily depends upon the legislative intent to be derived from an analysis of the statute involved. If the legislature is silent as to its intent to occupy a given field, resort must be had to the purposes of the legislative enactment and to the facts and circumstances upon which the enactment was intended to operate. If, however, the legislature affirmatively expresses its intent, either to occupy the field or to accord concurrent jurisdiction, there is no room for doubt.
(Citations omitted.) Lenci, 63 Wash.2d at 669-70, 388 P.2d 926. The Legislature can preempt local legislation by either express provision or necessary implication. Kennedy v. City of Seattle, 94 Wash.2d 376, 383-84, 617 P.2d 713 (1980).
*649 RCW chapter 16.08 regulates dogs. The chapter does not preempt the local regulation of dogs. RCW 16.08.090(2) explicitly provides that "Potentially dangerous dogs shall be regulated only by local, municipal, and county ordinances." See also RCW 16.08.080(4), which provides that cities and counties may charge an annual fee, in addition to regular dog licensing fees, to register dangerous dogs.
But on the specific subject of dangerous dogs, the chapter is silent regarding legislative intent to preempt the local regulation. Thus there is no express preemption. Nor is there any indication of implicit preemption. Because preemption is neither expressly provided nor necessarily implied, the Legislature has not preempted the field of regulating dangerous dogs.

Conflict:
Whether the ordinance conflicts with the statutory scheme is a closer question. The test for determining whether an ordinance conflicts with general laws is "whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." City of Bellingham v. Schampera, 57 Wash.2d 106, 111, 356 P.2d 292 (1960) (quoting Salt Lake City v. Kusse, 97 Utah 113, 119, 93 P.2d 671 (1938)), accord City of Seattle v. Williams, 128 Wash.2d 341, 352, 908 P.2d 359 (1995). Here, Rabon argues that the ordinance forbids the possession of dangerous dogs that the State permits under RCW 16.08.080.
The City argues that its ordinance is constitutional because it falls within an exception for ordinances that are prohibitive, yet consistent with a prohibitory state statute. "[T]he fact that a city charter provision or ordinance enlarges upon the provisions of a statute by requiring more than the statute requires, does not create a conflict unless the statute expressly limits the requirements." Lenci v. City of Seattle, 63 Wash.2d 664, 671, 388 P.2d 926 (1964) (quoting State ex rel. Isham v. Spokane, 2 Wash.2d 392, 398, 98 P.2d 306 (1940)). Recently the principal was applied in Brown v. City of Yakima, 116 Wash.2d 556, 807 P.2d 353 (1991). The issue there was whether a Yakima ordinance prohibiting fireworks sales, except between June 28 through July 4 of each year, was in conflict with a state statute prohibiting such sales, except between June 28 and July 6. Holding that the ordinance did not conflict with the statute, the Court distinguished prohibitory laws from regulatory laws:
a local ordinance does not conflict with a state statute in the constitutional sense merely because the ordinance prohibits a wider scope of activity. Where both the ordinance and the statute are prohibitory, and the difference between them is that the ordinance goes further in its prohibition, they are not deemed inconsistent because of mere lack of uniformity in detail. Washington's fireworks law is a prohibitory, rather than a regulatory, law.
(Citations omitted.) Brown, 116 Wash.2d at 562-63, 807 P.2d 353.
Rabon argues that the State statute requires local authorities to register dangerous dogs: "[t]he animal control authority of the city or county in which an owner has a dangerous dog shall issue a certificate of registration" when the applicant meets certain conditions. (Emphasis added.) RCW 16.08.080(2). Use of the word "shall" is presumptively imperative and operates to create a duty unless a contrary legislative intent is apparent. State v. Krall, 125 Wash.2d 146, 148, 881 P.2d 1040 (1994). We read "shall" to create a mandatory licensing of dangerous dogs as a minimum safeguard to protect the public from dangerous dogs. We hold that the Legislature created a prohibitory rather than regulatory statute and did not intend to prevent municipalities from further restricting the right of persons to possess dangerous dogs.
Rabon also argues that the Legislature explicitly provided that local authorities shall not regulate dangerous dogs. RCW 16.08.090(2) provides:
Potentially dangerous dogs shall be regulated only by local, municipal, and county ordinances. Nothing in this section limits restrictions local jurisdictions may place on owners of potentially dangerous dogs.
From this text, an inference of conflict is not logical. That the Legislature has explicitly *650 reserved for local authorities the regulation of potentially dangerous dogs does not shed light on the Legislature's intent with regard to dangerous dogs.
Rabon also argues that legislative history shows that the Legislature considered and abandoned a provision providing for the destruction of vicious dogs upon the owner's conviction for possessing a vicious dog. It is difficult, at best, to discern meaning from the legislative rejection of a particular proposal. See Seattle v. Williams, 128 Wash.2d 341, 354 n. 14, 908 P.2d 359 (1995) (doubting significance of legislative rejection of proposed provision to fully preempt field of regulating driving under the influence of intoxicating liquor). Rabon has failed to establish irreconcilable conflict.
Rabon next contends that the trial court erred when it concluded that he would not prevail on his procedural due process argument.
A jury tried and convicted Rabon of four counts of owning vicious dogs. The conviction necessarily required an adjudication of the issue of whether the dogs were vicious. Following the trial, the City ordered euthanization of the dogs without any additional hearing. Rabon argues that due process entitles him to a hearing on the issue of whether the dogs should be euthanized, or another less drastic means should be used to control the dogs.
The Seattle Municipal Code (SMC) provides different procedures for the destruction of vicious dogs depending on whether or not the owner has been convicted of owning a vicious dog. Where the destruction follows such a conviction, the finance director of the City, or his/her authorized representative, is authorized to "[d]irect immediate humane disposal of any animal ... involved in a court proceeding in which the owner pled guilty or was found to be guilty of owning a nuisance, vicious or dangerous animal." SMC 9.25.030(A)(4). The ordinance does not provide for any additional hearing beyond that provided in the criminal trial. Where the owner has not been convicted of owning a vicious animal, the SMC provides a scheme for notice, hearing and appeal before the City can destroy a dog. SMC 9.25.035-036. It appears that the drafters of the SMC intended that a trial or plea of guilty under SMC 9.25.030(A)(4) would take the place of a hearing. At issue is whether the constitution requires notice and hearingbeyond that provided at the criminal trialwhen the director exercises his authority to destroy the dogs.
The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.
The amount of process constitutionally required depends on the three factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976):
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
With regard to the first factor, the private interest, it is clear that Rabon (or any citizen) has the right to own a dog. The private interest then, is Rabon's property interest in his dogs. This right is not absolute:
Dogs are subject to police power and may be destroyed or regulated to protect citizens.... Thus, "property in dogs is of an imperfect or qualified nature."

American Dog Owners Ass'n v. City of Yakima, 113 Wash.2d 213, 217, 777 P.2d 1046 (1989) (quoting Sentell v. New Orleans & C. R.R., 166 U.S. 698, 701, 17 S.Ct. 693, 694, 41 L.Ed. 1169 (1897)). Even though the property interest is imperfect or qualified, the City concedes that Rabon is entitled to a hearing before being deprived of his property interest. But the City maintains that the criminal trial, with its full panoply of rights more than met due process standards. At a minimum, those rights were: right to counsel, jury trial, presumption of innocence, along with the burden of proof beyond a reasonable *651 doubt. With this in mind, we examine the other Mathews factors.
The second Mathews factor is the risk of an erroneous deprivation. Here, that risk is virtually non-existent because the issue of viciousness was already decided at the criminal trial. The City cites Morris v. Blaker, 118 Wash.2d 133, 821 P.2d 482 (1992), for its argument that prior litigation of the viciousness issue makes an additional hearing burdensome and unnecessary. At issue in Morris was whether the revocation of a weapon permit, as required for all weapon permits held by persons involuntarily committed to a mental institution, requires notice and hearing. Because the commitment was obtained by a judicial determination, the court held:
[t]he risk of erroneous deprivation of the right to a weapons permit is small in the circumstances present here, where a judicial determination of mental disorder and of some dangerwhether passive or aggressiveto self or others has already been made.
(Footnote omitted.) Morris, 118 Wash.2d at 145, 821 P.2d 482. Like the civil commitment issue in Morris, the viciousness of the dogs was already litigated and decided, so this would not be in dispute at a subsequent hearing.
As to the final Mathews factor, the government has an obvious interest in protecting the public from vicious dogs. The government also has a fiscal interest in promptly disposing of the dogs, thus limiting its impoundment costs. Such costs can be high: in this case the City claims that impoundment of the two dogs for a 28-month period has cost $11,648.00. The cost of additional impoundment and process would be unnecessarily burdensome on the public in this case, since the viciousness of the dogs is a foregone conclusion.
The trial court did not err in determining that Rabon would be unlikely to prevail on the merits of his due process claim. Due process does not require an additional hearing because the dogs were already found vicious beyond a reasonable doubt at Rabon's criminal trial.
Affirmed.
COX and GROSSE, JJ., concur.
GROSSE, Judge (concurring).
The majority permits the City of Seattle to prevent people from owning dangerous dogs. This conflicts with the dog licensing scheme crafted by the Legislature.
RCW 16.08 divides dogs into two categories, "potentially dangerous" and "dangerous." Local governments are not limited in their ability to regulate potentially dangerous dogs. RCW 16.08.090(2). But for dangerous dogs, the Legislature mandates that "[t]he animal control authority of the city ... shall issue a certificate of registration to the owner of [a dangerous dog] if the owner presents to the animal control unit sufficient evidence" of registration compliance. RCW 16.08.080(2) (emphasis added). The owner must provide a proper enclosure, warning signs, and a surety bond or liability insurance; and, significantly, a person cannot own a dangerous dog in Washington without a certificate of registration. RCW 16.08.080(2)(a)-(c); RCW 16.08.080(1).
Under the City's ordinances it is unlawful to own a "vicious" animal. Seattle Municipal Code (SMC) 9.25.083. By definition, a "vicious" animal implicitly includes both potentially dangerous dogs and dangerous dogs. See SMC 9.25.024. Under its ordinances, the City would never find a dog to be "dangerous." The result is that no Seattle dog owner has the opportunity to register his or her dog using the procedure outlined in RCW 16.08.080.
By eviscerating RCW 16.08's dual definitions of dogs, the City directly clashes with state statute. Article XI, section 11 of the Washington Constitution prevents such a conflict. A city may only enact regulations under its police power authority that are "`reasonable and consistent with the general laws.'" Brown v. City of Yakima, 116 Wash.2d 556, 559, 807 P.2d 353 (1991) (quoting Hass v. City of Kirkland, 78 Wash.2d 929, 932, 481 P.2d 9 (1971)); Wash. Const. art. XI, § 11. A city ordinance must yield to a statute on the same subject if "a conflict exists such that the two cannot be harmonized." Brown, 116 Wash.2d at 559, 807 P.2d *652 353 (quoting City of Spokane v. J-R Distribs., Inc., 90 Wash.2d 722, 730, 585 P.2d 784 (1978)). Here the City's scheme cannot be harmonized with the Legislature's scheme.
Nonetheless, because Rabon has failed to show an equitable right to avail himself of an injunction, the conflict does not require reversal of the trial court. The record clearly demonstrates that he failed to comply with the minimum requirements of maintaining a dangerous dog. Under RCW 16.08.100 an owner must maintain his or her dangerous dog in the proper enclosure and restrain a dog when it is outside the enclosure or the owner's dwelling. Rabon repeatedly allowed his dogs to be loose and unrestrained by a leash in direct violation of the court's 1992 order. Under these circumstances, I reluctantly agree with the majority that Rabon has not met his heavy burden to demonstrate his right to an injunction. While the dogs are small, and their sins correspondingly so, the intransigence of their owner dictates the result.
NOTES
[1] Judge Michael F. Moynihan is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.
[2] CR 65(a)(2) provides that a trial court may order consolidation of the trial on the merits and the hearing on the application for the injunction. We recommend consolidation in cases without issues of fact.