[No. 47989-5. En Banc. July 15, 1982.]

SNOHOMISH COUNTY, *Appellant,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

*Russ Juckett, Prosecuting Attorney,* and *Edward E. Level, Deputy,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Kathleen D. Mix, Assistant,* for respondents.

DIMMICK, J.—Snohomish County (County) filed this action against the State of Washington in an effort to stop construction of a new prison upon state–owned land adjacent to the Washington State Reformatory in Monroe. The action was based upon the State's failure to comply with the County's zoning ordinance and the alleged inadequacy of the environmental impact statement. The Thurston County Superior Court ruled that the State was not bound by the ordinance and the environmental impact statement was adequate as a matter of law. The County appealed both of these rulings. Prior to our hearing the appeal the parties entered into a Memorandum of Understanding wherein the State agreed to comply with the County's drainage and road ordinances. The State further agreed to limit the number of inmates to 500, to study the impact of the facility on surrounding school districts and request financial assistance for those districts if necessary, to comply with the County aesthetic requirements, to reimburse the County for costs of solid waste disposal, to provide continuing financial assistance equivalent to the annual salaries of one full–time deputy sheriff, one full–time detective, and at the option of the County either one full–time prosecutor or reimbursement for actual prosecuting time. The County in turn agreed to dismiss its appeal before this court except on the issue of compliance with local zoning and agreed to issue necessary building permits.

Accordingly, the issue now before us is whether the State in selecting the grounds of the Washington State Reformatory at Monroe as the site for the new prison and constructing the facility thereon is subject to the County's zoning regulation prohibiting such use. We hold that the zoning ordinance is unenforceable herein as it conflicts with general state laws and thus is unconstitutional under Const. art. 11, § 11.

In 1979 the Legislature, in an effort to alleviate prison overcrowding, appropriated $5.4 million to the Department of Social and Health Services (Department)[1] to provide for preliminary design, site preparation and steam plant for a 500–bed medium security prison. Laws of 1979, 1st Ex. Sess., ch. 270, § 177(22), p. 2196. The Department then created a task force to develop criteria for the evaluation of potential sites for the prison. In early 1980, the Department determined that a site on state–owned land adjacent to the Washington State Reformatory in Monroe would be studied in detail as the preferred location for the facility.

The State prepared a preliminary environmental assessment with respect to the facility in order to solicit public comment to assist in preparation of the draft environmental impact statement. After public meetings in Monroe, a draft environmental impact statement was prepared. During this period the Legislature enacted Laws of 1980, ch. 167, § 13(22), p. 534, amending the appropriation made in 1979 and required that the facility be built on the site of an existing state adult correction facility or on the site of the federal facility the State planned to acquire.

A final environmental impact statement was issued. Due to a change in the administration, all documents were presented to the new agency heads for consideration. Subsequently, the agency heads communicated their approval of the Monroe site in a letter to Governor Spellman. They outlined their reasoning in an accompanying document and

---

[1]The correctional duties of the Department of Social and Health Services were transferred to the Department of Corrections. RCW 72.09.040.

specified how impacts would be mitigated. They also noted that timely construction of the facility was essential. The document made it clear that the State had considered the concerns of the local community.

The Legislature in the 1981 session again indicated its intent regarding the location of the prison when it approved a $28 million appropriation to construct the prison. The appropriation specifically provided that the facility was to be built on the grounds of the Washington State Reformatory at Monroe. Laws of 1981, ch. 143, § 7(6).[2]

Const. art. 11, § 11 grants a county the power to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." The county's police power is as extensive as that of the Legislature, so long as the subject matter is local and the regulation does not conflict with general laws. *State v. Seattle,* 94 Wn.2d 162, 165, 615 P.2d 461 (1980).

In *State v. Lundquist,* 60 Wn.2d 397, 401, 374 P.2d 246 (1962), we stated that the test to ascertain whether a local ordinance conflicts with general laws is "whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa . . . Judged by such a test, an ordinance is in conflict if it forbids that which the statute permits". (Citations omitted.) We have recognized concurrent jurisdiction by two governmental bodies in certain instances. However, "[w]hether there be room for the exercise of concurrent jurisdiction in a given instance necessarily depends upon the legislative intent to be derived from an analysis of the statute involved." *Lenci v. Seattle,* 63 Wn.2d 664, 669, 388 P.2d 926 (1964). Thus, in determining whether the state statutes and local regulation herein can coexist, we must examine the intent of the Legislature.

---

[2]This provision was introduced in the Senate in February and was passed by the Senate April 26. Four days later, the County filed this action. By April 26, both houses of the Legislature had approved the budget and the Governor signed it on May 14. The appropriation became effective July 1, prior to judgment herein.

 The Legislature vested the Department with the power to manage and govern the state reformatory at Monroe and to repair and construct buildings on the grounds of that facility. RCW 72.01.050(2), .110. In addition, the Legislature specifically provided for a population limit for the proposed medium security facility *at Monroe.* RCW 72.12-.160. As noted above, the Legislature in approving various appropriations for the facility was continually aware of the new facility's proposed location and the County's zoning of that land. Nevertheless, the Legislature specifically required that the new facility be located on the grounds of the Washington State Reformatory at Monroe. Laws of 1981, ch. 143, § 7(6).

The conclusion to be drawn from these provisions is clear. The Legislature in balancing the interests involved determined that the decision as to the new prison's location on the grounds of the state reformatory was to be made by the State and the agency responsible for the facility. The decision was not one to be controlled by local authorities. If it were so controlled, it is conceivable state prisons would not be permitted in any county. Accordingly, the Legislature unequivocally expressed its intent to preempt the County's zoning regulation insofar as it conflicted with the State's decision regarding the prison's location. We note that there are instances where the Legislature specifically allows local authorities to exercise control over State projects. For example, RCW 19.27 provides that local authorities are to enforce minimum building code requests and any amendments adopted by the local government. The provisions specifically apply to state buildings. In contrast, the zoning regulation in the instant case cannot be harmonized with the legislative enactments. Thus, Const. art. 11, § 11 requires that the local regulation yield to the general laws of the state. *See State v. Seattle, supra.*

The State requests us to adopt a blanket rule of immunity exempting all state projects from municipal regulations unless the Legislature specifically provides otherwise. *See Kentucky Inst. for Blind v. Louisville,* 123 Ky. 767, 97 S.W.

402 (1906). Various other tests have been adopted by courts in determining whether one governmental unit is immune from another unit's zoning regulations. The tests are utilized when legislative intent appears unclear and are often based upon superior sovereignty, eminent domain, the governmental–proprietary use distinction, or a balancing of interests. *See, e.g., Scottsdale v. Municipal Court,* 90 Ariz. 393, 368 P.2d 637 (1962); *Taber v. Benton Harbor,* 280 Mich. 522, 274 N.W. 324 (1937); *Oronoco v. Rochester,* 293 Minn. 468, 197 N.W.2d 426 (1972); *State ex rel. Askew v. Kopp,* 330 S.W.2d 882 (Mo. 1960); *Rutgers v. Piluso,* 60 N.J. 142, 286 A.2d 697 (1972); *Aviation Servs., Inc. v. Board of Adj.,* 20 N.J. 275, 119 A.2d 761 (1956); *South Hill Sewer Dist. v. Pierce Cy.,* 22 Wn. App. 738, 591 P.2d 877 (1979). *See also* Annot., 59 A.L.R.3d 1244 (1974); Annot., 61 A.L.R.2d 970 (1958); Note, *Governmental Immunity From Local Zoning Ordinances,* 84 Harv. L. Rev. 869 (1971); Note, *Municipal Power To Regulate Building Construction and Land Use by Other State Agencies,* 49 Minn. L. Rev. 284 (1964); Comment, *Recent Cases in the Law on Intergovernmental Zoning Immunity: New Standards Designed To Maximize the Public Interests,* 8 Urb. Law. 327 (1976). Since the Legislature clearly expressed its intent to preempt the County's authority in the applicable statutes before us, we find it unnecessary to adopt any of the above tests at this time.

We conclude, under the circumstances of this case, the State is not subject to the County's zoning ordinance. Thus, we affirm the trial court.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and PEARSON, JJ., concur.