[No. 54682–7.  En Banc.  May 4, 1989.]

THE CITY OF EVERETT, *Respondent*, v. SNOHOMISH
COUNTY, ET AL, *Appellants*.

*Seth R. Dawson, Prosecuting Attorney,* and *Sue A. Tan-
ner, Deputy,* for appellants.

*Bruce E. Jones, City Attorney,* and *Sullivan, Graafstra
& Twisselman,* by *James D. Twisselman,* for respondent.

ANDERSEN, J.—

FACTS OF CASE

This "sibling rivalry" case involves a zoning dispute
between a county and city. Snohomish County claims its
zoning authority is paramount and the City of Everett

claims it is not. It is the City's argument that the statutes empowering the City to dispose of its sewage sludge and solid waste, together with the City's general eminent domain power, establish its authority to locate a disposal facility in the County even though it does not comply with the County's zoning regulations.

The City of Everett owns and operates a sewage treatment plant on Smith Island in the estuary of the Snohomish River. At this facility the City discharges treated domestic, commercial and industrial wastes into the Snohomish River. It does so subject to effluent limitations and monitoring and reporting requirements imposed by a state permit.

In September 1985, the United States Environmental Protection Agency (EPA) found that the City had violated the permit requirements by allowing the accumulation of sewage sludge or solid wastes in the facility's treatment lagoons, thereby reducing that facility's treatment capacity. The EPA ordered the City to submit a plan and schedule for removal and disposal of the excess sludge. In its effort to comply with the EPA order, the City formulated a sludge management program which entailed removal of the sludge to a 952–acre site on nearby Ebey Island. This site, on another island in the Snohomish River, lies outside the City and within unincorporated Snohomish County.

The City then acquired an option to purchase the Ebey Island property and applied to the Snohomish Health District for a sludge utilization permit. The health district agreed to issue this permit on condition that the City first obtain a zoning code conditional use permit from the County. The City applied for a permit, but a Snohomish County hearing examiner denied the application. In so doing, the examiner found that the sludge exhibited high levels of heavy metals and that the property was characterized by low soil pH, flooding and a high water table. It was

the examiner's conclusion that the City's proposed use of the site was incompatible with the use of surrounding property for agricultural purposes. The Snohomish County Council upheld the decision.

The City thereupon brought this action against Snohomish County and the Snohomish County Council, hereinafter collectively referred to as the County. The City moved for summary judgment in its favor on the siting dispute and the Superior Court granted it.

The County petitioned this court for direct review. We granted review[1] and address the critical issue in the case.[2]

## ISSUE

Are the land use activities of an intruding subunit of government (the City) immune from the zoning regulations of the host subunit of government (the County)?

## DECISION

CONCLUSION. Legislative intent determines whether the intruding subunit of government (the City) is immune from the zoning regulations of the host subunit (the County). In

---

[1] At oral argument before this court, counsel for the County stated that the City's option to purchase the Ebey Island site had expired without being exercised and asserted that this entire matter is now moot. The City did not contest that its option had expired, but contended that this matter is not moot because it still bears on other claims the City says it is making. The parties have not fully briefed and argued the issue of whether or not this matter is moot and we will not, therefore, decide that issue. Indeed, it is not necessary for us to do so because even if we were to determine that the matter is now moot, we could consider the issue presented reviewable since it concerns a matter of continuing and substantial public interest. This is because: (1) the issue is of a public nature; (2) an authoritative determination will provide future guidance to public officers who must decide where public projects are to be situated; and (3) as evinced by the companion case of *Olympic View Water & Sewer Dist. v. Snohomish Cy.*, 112 Wn.2d 445, 447, 772 P.2d 998 (1989), also before us, the issue is likely to recur. *See Hart v. Department of Social & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988); *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972).

[2] The costs issue discussed by the parties is for the Supreme Court Clerk to determine in accordance with the Rules of Appellate Procedure. *See* RAP 14.

reviewing the statutes empowering the pertinent activities of both subunits of government in this case, it is apparent that the intent of the Legislature is that the City be required to comply with the County's zoning regulations in establishing a sewage sludge and solid waste disposal site in the County.

The problem presented in this case is but illustrative of the broader problem of an almost unlimited range of potential controversies that can develop when push comes to shove between various subunits of government. Where all else fails, it is incumbent upon the courts to determine which subunit of government, if any, has the paramount authority in a given situation. A review of the numerous cases on the subject nationwide suggests that the most vexing of such problems are those involving the siting of unpopular but essential facilities such as sewage treatment, sewage sludge and solid waste disposal, penal and certain health care institutions. It is very clear, particularly in the case of sewage and solid waste disposal facilities, that while everyone contributes to the problem, no one wants to be part of the solution.

Since this case involves a zoning dispute, it is appropriate to note one preliminary matter. This is, that while it has sometimes been declared to be a general rule that zoning regulations or restrictions of a subunit of government do not apply to the State, its agencies and subunits of government, unless the Legislature has manifested a contrary intent,[3] This court has declined to adopt any such blanket rule of governmental immunity from local zoning ordinances.[4]

In past years in deciding controversies involving zoning conflicts between subunits of government, particularly before the present day profusion of municipal corporations

---

[3]*See* 8 E. McQuillin, *Municipal Corporations* § 25.15, at 39 (3d rev. ed. 1983).

[4]*See State v. Seattle,* 94 Wn.2d 162, 166–67, 615 P.2d 461 (1980); *Snohomish Cy. v. State,* 97 Wn.2d 646, 650–51, 648 P.2d 430 (1982).

and state and local agencies, courts tended to resort to four traditional "tests".[5]

One such test is the *superior sovereignty test*. Under this test, where one governmental unit seeks immunity from the zoning restrictions of another governmental unit, the unit which is higher in the governmental hierarchy will be held to prevail.[6] The difficulty with this test is that "'superior authority' in the political hierarchy does not necessarily imply superior ability in allocating land uses."[7]

A second of these traditional tests is the *governmental–proprietary test*. Using this test, a subunit of government will be deemed immune from conflicting zoning regulations when it performs governmental functions, but will be subject to such regulations when it acts in a proprietary capacity.[8] A review of the cases applying this test, however, demonstrates that different courts often reach entirely different conclusions on similar facts.[9]

A third test used is the *eminent domain test*. Under the eminent domain test, any governmental unit with condemnation authority may be considered automatically immune from zoning restrictions.[10] This test, however, is susceptible

---

[5]*Snohomish Cy. v. State,* 97 Wn.2d at 651. *See also* Annot., *Applicability of Zoning Regulations to Waste Disposal Facilities of State or Local Governmental Entities,* 59 A.L.R.3d 1244 (1974).

[6]*See Temple Terrace v. Hillsborough Ass'n for Retarded Citizens, Inc.,* 322 So. 2d 571, 576–77 (Fla. Dist. Ct. App. 1975), *aff'd,* 332 So. 2d 610 (Fla. 1976); 5 P. Rohan, *Zoning and Land Use Controls* § 35.05[2], at 35–56 (1988).

[7]Note, *Governmental Immunity From Local Zoning Ordinances,* 84 Harv. L. Rev. 869, 878 (1971).

[8]*Temple Terrace v. Hillsborough Ass'n for Retarded Citizens, Inc., supra;* 5 P. Rohan § 35.05[1], at 35–54.

[9]*See* 5 P. Rohan § 35.05[1], at 35–55 and authorities cited; 2 R. Anderson, *Zoning* § 12.03, at 481–82 (3d ed. 1986). *See also* Annot., *Applicability of Zoning Regulations to Governmental Projects or Activities,* 61 A.L.R.2d 970 (1958).

[10]*Temple Terrace v. Hillsborough Ass'n for Retarded Citizens, Inc., supra;* 5 P. Rohan §35.05[3], at 35–57 to 35–61.

to being used as a bludgeon to allow an intruding subunit of government to locate an offensive facility, such as a sewage treatment plant, anywhere in a host subunit's area that it wants to, even, for example, in a single family residential neighborhood.[11] Nor is there anything in the constitutional requirement that eminent domain powers be exercised only when there is a finding that property is being taken for a "public use" that offers protection in such cases.[12] This, in turn, is in disregard of the State's expressed concern for planned environments.[13] As one commentator observes, "when eminent domain power automatically immunizes a governmental unit from zoning regulation, there is no institutional incentive to comply with local zoning ordinances and no sanction other than adverse public opinion for irresponsible land–use decisions."[14]

Yet a fourth test is the *balancing of interests test,* which has been favored by some commentators and courts dissatisfied with the other tests noted. This more recent test calls for taking into consideration the nature of the governmental unit seeking immunity, the land use involved and its

---

[11]4 A. & D. Rathkopf, *Zoning and Planning* § 53.06, at 53–36 (4th ed. 1988).

[12]The "public use" requirement of the Washington Constitution is met where the court finds: "(1) that the use is really public, (2) that the public interests require it, and (3) that the property appropriated is necessary for the purpose." *In re Seattle,* 96 Wn.2d 616, 625, 638 P.2d 549 (1981). This test focuses only on the public nature and necessity of the proposed use of the property. It does not consider whether that use complies with local zoning laws. The "public use" provision of the fifth and fourteenth amendments to the United States Constitution likewise provides no protection in this area. The test under the federal constitution merely inquires whether "the exercise of the eminent domain power is rationally related to a conceivable public purpose". *See Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 299, 241, 81 L. Ed. 2d 186, 104 S. Ct. 2321 (1984). Thus, it too fails to consider compatibility of the use with zoning regulations.

[13]*See* RCW 36.70.010.

[14]Note, 84 Harv. L. Rev. at 876.

effects as well as the public interest served by such use.[15] Attractive as this particular test appears to some who find the other tests unsatisfactory, it is an approach which has now been rejected by some courts which consider it to be discredited. The Supreme Court of Pennsylvania, for example, calls the test too uncertain, pointing to the inevitable litigation that results from the knowledge that the next court might "balance" differently from the last.[16] The Supreme Court of Georgia, in turn, finds this balancing test to be "too nebulous and judicially unmanageable."[17]

Considerable dissatisfaction with all four of these traditional tests and combinations thereof has been evinced by numerous courts and commentators for a variety of reasons, including the reasons noted in connection with the preceding enumeration of the tests. They have been variously described as simplistic abstractions, unhelpful epithets, ritualistic, enigmatic and as leading to the proliferation of inconsistent results.[18]

As one court cogently explains, "[t]he question of what governmental units or instrumentalities are immune from municipal land use regulations, and to what extent, is not one properly susceptible of absolute of ritualistic answer. Courts have, however, frequently resolved such conflicts in perhaps too simplistic terms and by the use of labels rather than through reasoned adjudication of the critical question

---

[15]5 P. Rohan § 35.05[5], at 35–65 n.19; 4 A. & D. Rathkopf § 53.06[1], at 53–38 to 53–51.

[16]Department of Gen. Servs. v. Ogontz Area Neighbors Ass'n, 505 Pa. 614, 483 A.2d 448 (1984).

[17]Macon Ass'n for Retarded Citizens v. Macon–Bibb Cy. Planning & Zoning Comm'n, 252 Ga. 484, 490, 314 S.E.2d 218 (1984).

[18]See 4 A. & D. Rathkopf §§ 53.06, 53.06[1], at 53–38 n.3 and authorities there cited; Note, 84 Harv. L. Rev. at 869; Department of Gen. Servs. v. Ogontz Area Neighbors Ass'n, supra; Macon Ass'n for Retarded Citizens v. Macon–Bibb Cy. Planning & Zoning Comm'n, supra.

of which governmental interest should prevail in the particular relationship or factual situation."[19]

An example of what is wrong with simply applying one of the four labels and letting the results fall where they may is illustrated by a case argued by counsel herein, and in which case the facility of the intruding sewer district was ruled immune from the County's zoning regulations. That case was *South Hill Sewer Dist. v. Pierce Cy.*, 22 Wn. App. 738, 591 P.2d 877 (1979). There, the Court of Appeals had before it a situation, to use the court's terminology, where Pierce County had "repudiated" its previous approval of the siting of a sewage treatment facility in Pierce County, or "[b]luntly put, they reneged, . . ."[20] The Court of Appeals applied the eminent domain test to justify striking down the County's action and to allow siting the facility in the county. To follow the eminent domain test in *South Hill* was one thing, but to follow it here, or, for example, to use it to justify placement of a sewage treatment or waste disposal facility in a residential neighborhood, are entirely different propositions indeed.

█ The crux of the matter, as we see it, and the real determinant in cases such as this, is *legislative intent.* As one court has aptly summarized in the context of a sibling rivalry zoning dispute,

[the] common thread running through these cases, although not clearly stated in some, is an attempt to determine the intent of the Legislature when deciding whether a governmental unit is subject to a municipal zoning ordinance. We hold today that the legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances.[21]

---

[19]*Rutgers v. Piluso,* 60 N.J. 142, 150, 286 A.2d 697 (1972).

[20]*South Hill Sewer Dist. v. Pierce Cy.,* 22 Wn. App. 738, 741, 591 P.2d 877 (1979).

[21]*Dearden v. Detroit,* 403 Mich. 257, 264, 269 N.W.2d 139 (1978).

We agree with this statement of the law and so hold in this case. This succinct statement of principle fully accords with the views this court has previously expressed in analogous cases.[22] While it is true that the analysis of statutory law to discern legislative intent is often difficult, particularly where the legislative design is complex, it is nevertheless a judicial function which courts are both capable of and experienced at performing.

This principle is essentially predicated on the proposition that under our state constitutional system, it is the Legislature which not only enacts statutes enabling municipalities to adopt zoning ordinances, but which also enacts the statutes which authorize state agencies and other subunits of government to undertake governmental functions.[23] By the same measure, the Legislature is also the body empowered to prescribe by statute the extent to which state facilities should be subject to local land use controls, as well as to confer authority upon subunits of government and to establish priorities between them.[24]

A situation was before this court in *Edmonds Sch. Dist. 15 v. Mountlake Terrace,* 77 Wn.2d 609, 465 P.2d 177 (1970) which was similar in many respects to the one now before us. There, the dispute was between a school district, which had the authority to build, operate and maintain public schools, and a city, which had the authority to adopt and enforce its own building code.

In *Edmonds,* after discussing the sources of the authority of the school district and the city, we observed that

---

[22]*See Snohomish Cy. v. State,* 97 Wn.2d 646, 649, 648 P.2d 430 (1982); *State v. Seattle,* 94 Wn.2d 162, 166, 615 P.2d 461 (1980); *Lenci v. Seattle,* 63 Wn.2d 664, 669–70, 388 P.2d 926 (1964).

[23]Const. art. 11, §§ 10 (amend. 40), 11; Comment, *The Inapplicability of Municipal Zoning Ordinances to Governmental Land Uses,* 19 Syracuse L. Rev. 698, 705–06 (1968).

[24]*See* 4 A. & D. Rathkopf § 53.05, at 53–29; Note, *Governmental Immunity From Local Zoning Ordinances,* 84 Harv. L. Rev. 869, 879 (1971).

the state, in delegating to school districts power to build, maintain and operate public schools, has not prescribed minimum standards for street offsets, nor directed that building permits be waived in the construction of public school buildings or additions. It has left its subordinate municipalities free to regulate each other in those activities which traditionally are thought to lie within their particular competence and are more proximate to their respective functions.

*Edmonds,* at 613. Then, after reviewing other similar cases, we concluded:

There is little doubt that the State of Washington . . . has the constitutional power to prescribe standards for and regulate school construction, and may, as an attribute of its sovereignty, deprive municipalities of any voice in these matters. But the state has not thus far exercised this power nor prohibited cities from exacting a building permit fee, nor relieved school districts within the corporate limits of a city from paying such fee or complying with the setback provisions of the municipal building code. Unless the state has, so to speak, preempted the field of building standards or specifically ousted the municipality of jurisdiction over school construction, we think the school district is obliged to comply with the minimum standards set forth in the city's building code.

*Edmonds,* at 614.

So it is here that the Legislature, in empowering cities to acquire property within and without their corporate limits[25] and to acquire, construct and operate sewage[26] and solid waste disposal[27] systems, did not provide detailed standards to guide them in selecting sites to dispose of their sewage sludge and solid wastes. Nor did the Legislature purport to preempt the field of zoning regulations or otherwise oust the counties from their zoning authority. Thus, as we perceive the intent of the Legislature through a

---

[25]RCW 35.22.280(3), (6).

[26]RCW 35.67.020.

[27]RCW 35.21.152; RCW 35.92.020, .022.

careful examination of the statutory authority extended by the Legislature to both the City and the County in the matters before us, the City was obliged to comply with the County's zoning code. Accordingly, we conclude that the trial court erred in ruling to the contrary. Further, to the extent that the substances the City seeks to dispose of in this case may be deemed solid waste, as we believe they can be,[28] compliance with pertinent zoning requirements is mandated by statute.[29]

Just as one subunit of government cannot intrude its unpopular facilities upon a host subunit of government anyplace it desires simply because it has the power of eminent domain, neither may the host subunit of government erect an impenetrable barrier against intrusions by other subunits of government just because it possesses the zoning power.[30] As one commentator has appropriately observed,[31]

> in situations where the local zoning ordinance does not allow for the allocation of land for the performance of functions essential to the community, courts should look directly to the reasonableness of the zoning ordinance

---

[28]Under the solid waste management statute (RCW 70.95), a city seeking to establish a solid waste disposal site must first obtain a permit "from the jurisdictional health department". RCW 70.95.170. A "disposal site" is defined as including the location where "utilization . . . of solid waste occurs." RCW 70.95.030(5). The statutory definition of "solid waste" is broad enough to include sewage sludge. RCW 70.95.030(9). Indeed, Department of Ecology regulations adopted pursuant thereto specify that sewage sludge constitutes solid waste. WAC 173–304–100(73).

[29]The City, in seeking to establish a solid waste disposal site, is required to obtain a permit therefor. RCW 70.95.170. such a permit can only be issued if the City is in compliance "with all zoning requirement". RCW 70.95.180(1), (3). Such "zoning requirements", when applied to the facts of the case before us, would include compliance with the County's conditional use permit requirements.

[30]See Duckworth v. Bonney Lk., 91 Wn.2d 19, 28, 586 P.2d 860 (1978) (municipality cannot totally exclude mobile homes from a community); State ex rel. Wenatchee Congregation of Jehovah's Witnesses v. Wenatchee, 50 Wn.2d 378, 381, 312 P.2d 195 (1957) (zoning ordinance cannot wholly exclude churches from residential districts).

[31]Note, 84 Harv. L. Rev. at 886.

itself. Courts have traditionally applied a rather liberal standard of scrutiny in determining the reasonableness of zoning ordinances, concluding that if the ordinance bears a reasonable relation to the promotion of the health, safety and welfare of the community, it is presumptively valid. If zoning laws, however, have made no provisions for sewage or garbage disposal or for schools adequate to meet the needs of the population, this presumptive validity is seriously suspect. Indeed, the more critical the excluded function, the greater the justification for examining the reasonableness of the zoning ordinance.

(Footnotes omitted.) In the case before us, the County has provided a number of areas where the zoning is appropriate for solid waste disposal.[32]

Furthermore, zoning ordinances of one subunit of government do not necessarily conflict with another governmental subunit's authority to condemn; reasonable zoning ordinances limit but do not necessarily eliminate another governmental subunit's power to locate its facilities through its eminent domain power.[33]

The parties inform us that most disputes of this kind are resolved amicably between the subunits of government involved. This is as it should be and is a practice to be earnestly commended. As one court has observed in a similar situation, "[o]ur burgeoning population and the rapidly diminishing available land make it all the more important that the use of land be intelligently controlled. This can only be done by a cooperative effort between interested parties who approach their differences with an open mind and with respect for the objectives of the other."[34] Such

---

[32]As the Reply Brief of Appellant (filed by the County) points out at page 2, "[t]he County's zoning code *allows* sludge utilization as a conditional use in twenty zones within the County and as an outright permitted use in one zone. The County zoning code excepts from the definition of solid waste, and accords preferential treatment to sludge utilization as defined in the code."

[33]*See* Note, 84 Harv. L. Rev. at 875.

[34]*Temple Terrace v. Hillsborough Ass'n for Retarded Citizens, Inc.*, 322 So. 2d 571, 579 (Fla. Dist. Ct. App. 1975), *aff'd*, 332 So. 2d 610 (Fla. 1976).

cooperation is particularly appropriate where, as here, the differences are between governmental subunits, both dedicated to serving the public.

In the trial court, the City argued to the effect, as it again does here, that the Court of Appeals decision in *South Hill Sewer Dist. v. Pierce Cy.*, 22 Wn. App. 738, 591 P.2d 877 (1979) stands for the proposition that the City's power of eminent domain exempts it from obtaining a County conditional use permit.[35] As discussed above, that is incorrect. In this case, the experienced trial court found that view of *South Hill* difficult to accept, but ultimately did accept it while at the same time inviting the County to appeal and seek review of that issue. To the extent that *South Hill* does not accord with our decision herein,[36] it is overruled. The remaining issues referred to in the briefs are nonmeritorious.[37]

Reversed and remanded.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, PEARSON, DURHAM, and SMITH, JJ., concur.

---

[35]See Brief of Respondent, at 63.

[36]We note that *South Hill Sewer Dist. v. Pierce Cy.*, 22 Wn. App. 738, 591 P.2d 877 (1979) can also be argued as standing for the proposition that legislative intent is the real determinant. *See South Hill,* at 743–45.

[37]As to costs, however, see footnote 2.